### NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

### LOCAL 40, INTERNATIONAL ASSOCIATION OF HEAT AND FROST INSULATORS AND ASBESTOS WORKERS, AFL–CIO, Respondent.

No. 88, Docket 71–1341.

United States Court of Appeals, Second Circuit.

Argued Oct. 5, 1971.

Decided Nov. 5, 1971.

Herbert Fishgold, Atty., NLRB (Arnold Ordman, Gen. Counsel, NLRB, Dominick L. Manoli, Asst. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Eugene B. Granof, Atty., NLRB, of counsel), for petitioner.

Dominick Tocci, Gloversville, N. Y. (Pozefsky & Tocci, Gloversville, N. Y.), for respondent.

Before MURRAH,* WATERMAN and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

The National Labor Relations Board pursuant to section 10(e) of the National Labor Relations Act, as amended, 29 U.S.C. § 160(e), petitions for enforce-ment of its order against Local 40, International Association of Heat and Frost Insulators and Asbestos Workers, AFL–CIO. The Board, affirming the Trial Examiner, found that Local 40 had violated sections 8(b) (1) (A) and 8(b) (2) of the Act, 29 U.S.C. §§ 158(b) (1) (A), 158(b) (2) by causing Robert A. Keasbey Co. ("Keasbey") to terminate Raymond Morehouse because of his non-membership in Local 40, and by restraining and coercing him in the exercise of his rights under section 7 of the Act, 29 U.S.C. § 157. The Board has ordered Local 40 to cease and desist from causing or attempting to cause the members of the Asbestos Contractors Association of Albany (the "Association") to discriminate against Morehouse or any other employee for non-membership in Local 40 for any reason other than failure to tender periodic dues or initiation fees, and from any like denial of section 7 rights; affirmatively, Local 40 is required to compensate Morehouse for any loss of wages he has suffered, to notify all members of the Association in writing, with a copy to Morehouse, that there is no further objection to his employment, and to post the usual notices of the proceedings. No jurisdictional issue arises since the claimed unfair labor practices occurred in Albany, New York where Keasbey, engaged in commerce within the meaning of the Act, conducts its asbestos insulation business.

Local 40 is comprised of Mechanics and their helpers, called Improvers; the collective bargaining agreement between Local 40 and the Association required a ratio of one Improver to four Mechanics in any shop. Whenever Local 40 was unable to meet an Association member's demands for personnel from within its own membership, it would provide either "travelers" from other locals or "permit men," who are non-union employees. Of the twenty-four men employed by Keasbey in December, 1968—all referrals from Local 40—sixteen were members, one was a traveler, and seven, including Morehouse, were permit men.

In December, 1968, Local 40 Business Agent Rossworm telephoned Keasbey Manager Rieth, informing him that union men were out of work while non-members were employed, and requesting that Rieth "act accordingly." Although Keasbey needed men, Rieth terminated five of the seven permit men in January, retaining only Morehouse and his son. Late that month, the Morehouses took a vacation, the timing of which was shown by hearsay evidence to be in part the result of union pressure. The Trial Examiner was explicit that the evidence was recognized as hearsay, and admitted not on the merits but only for the limited purpose of explaining the Morehouses' conduct. Rossworm's discovery that the Morehouses had not been terminated with the other five permit men in January led to inquiries, to which Rieth responded that the Morehouses were on extended vacation. Rossworm replied that as far as he was concerned they were laid off, and he marked his records accordingly. Upon their return from vacation only the younger Morehouse was able to obtain employment with Keasbey, and he was shortly terminated at Rossworm's request. Rossworm agreed to place the Morehouses on Local 40's referral list but neither was ever subsequently referred to any job or employed by any member of the Association.

In April, a Joint Trade Board meeting was held to deal with Association complaints of insufficient workers to staff available jobs. The minutes of that meeting reveal an undertaking to expand union membership by taking in former permit men, not to include Morehouse, who was spoken of unfavorably. A union official stated that the expansion of Local 40 should obviate the need to hire permit men in the future.

* Senior Circuit Judge for the Tenth Circuit, sitting by designation.

Local 40 insists first, that it did not cause Keasbey to discriminate against Morehouse, but simply sought to enforce the ratio requirements of its contract; second, that if its conduct did in fact cause the termination of Morehouse, it was owing only to its legitimate demands for compliance with the contractual ratio; third, that if it could be found that Morehouse's termination had been sought for nonmembership, it was a permissible demand under the union-security provision of the contract since Morehouse had never applied for union membership.

Based, however, on the foregoing, essentially undisputed facts, the Trial Examiner chose to disbelieve Local 40's explanations, and to find that Rossworm's demands were intended to cause Keasbey to terminate Morehouse solely for his nonmembership in the union. He relied particularly on his findings that Rossworm was not a credible witness owing to contradictions between his sworn affidavits and his testimony, as well as inconsistencies in his testimony; that Rossworm advanced his contractual ratio rationale for his demands neither in his affidavits nor in the answer to the complaint, but for the first time on oral argument; that Rossworm neglected to explain the minutes of the Joint Trade Board meeting; that Rossworm in his communication with Rieth had been concerned not with the contractual ratio, which was not mentioned, but with whether the Morehouses had been laid off; and that the contractual ratio was never remotely correct even after termination of all permit men, nor was any demand for compliance made of Keasbey before, during or after the Joint Trade Board meeting.

■ On this record as a whole, and given no persuasive reason to discredit the Trial Examiner's evaluation of the witnesses' credibility, see, e. g., NLRB v. Warrensburg Board & Paper Corp., 340 F.2d 920, 922 (2d Cir. 1965), it is clear that there is substantial evidence to support the Board's finding that Local 40 has committed an unfair labor practice in violation of sections 8(b)(1) (A) and 8(b) (2) of the Act by causing the termination of Morehouse not pursuant to a valid union-security clause, but simply for non-membership in the union. See Radio Officers v. NLRB, 347 U.S. 17, 40–42, 74 S.Ct. 323, 98 L.Ed. 455 (1954).

■■ Local 40 attacks certain of the evidence purportedly underlying the Trial Examiner's decision as inadmissible hearsay. The Trial Examiner, however, was perfectly clear, and the record does not impugn his resolution, that the conversations of the Morehouses with their supervisors would not be considered on the merits. We are convinced, moreover, that even if we were to find that the hearsay evidence subtly influenced the Trial Examiner, his conclusions are more than sufficiently buttressed by the other evidence before him. See NLRB v. Custom Chair Mfg. Co., 422 F.2d 1300, 1301 (9 Cir. 1970). The minutes of the Joint Trade Board meeting, as the record of a regularly conducted activity kept in the usual course of business by the recording secretary of Local 40, were properly admitted as a "business-entries" exception to the hearsay rule (28 U.S.C. § 1732). No reason appears to suspect the accuracy of the minutes; indeed, their accuracy was not disputed by any of the participants, all but one of whom were present at the hearing before the Trial Examiner.

■ Nor is there any merit in Local 40's attempt to justify a request for Morehouse's termination by invoking the union-security provision. To become a member of Local 40, an applicant must be under thirty years of age and have a high school diploma or equivalency certificate; Morehouse had neither and was fifty-three years old. In any event, the obligation lay not with Morehouse but with the union before enforcing a security provision against an employee to inform him of his obligations to become a member and to pay dues. NLRB v. Local 182, I.B.T., 401 F.2d 509, 510 (2d Cir. 1968).

Order enforced.